Christopher J. Reichman  SBN 250485
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorney for Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| PAUL SAPAN,<br><br>       Plaintiff,<br>  vs.<br><br>LEXINGTON MORTGAGE CORPORATION d/b/a LEXINGTON HOME LOANS, a California Corporation, and SPIROS K. CHENG, an individual,<br><br>       Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, INCLUDING PUNITIVE DAMAGES, INTEREST AND ATTORNEY'S FEES, AND FOR INJUNCTIVE RELIEF**<br><br>**Violation(s) of Telephone Consumer**<br>**Protection Act of 1991**<br>**Trespass to Chattel**<br>**Unfair Business Practices** |

COMES NOW Plaintiff PAUL SAPAN (hereinafter referred to as

"Plaintiff") who alleges as follows:

/ / /

/ / /

- 1 -

Complaint

## JURISDICTIONAL ALLEGATIONS

1.      Plaintiff is, and at all times herein mentioned was, a resident of the Los Angeles, but has recently moved to the County of Orange, State of California.

2.      Defendant LEXINGTON MORTGAGE CORPORATION d/b/a LEXINGTON HOME LOANS ("Lexington Home Loans") is, and at all times herein mentioned was, a California corporation, doing business in the County of Los Angeles, State of California.

3.      Defendant SPIROS K. CHENG is, and at all times herein mentioned was, doing business in the County of Los Angeles, State of California.

4.      This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq.  The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441.  *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012).  The state law claim herein arises out of a common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5.      At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

Complaint

**FACTUAL SUMMARY**

6.      Defendants made twenty six (26) live calls and one (1) prerecorded call to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch legal services on the following dates and times and using the following Caller ID ("CID") numbers and Caller ID name ("CNAM"):

- July 25, 2014 at 1:57 pm, CID 510-699-6283 ("Debt Help")
- August 1, 2014 at 9:12 am, CID 510-699-6283 ("Debt Help")
- August 1, 2014 at 9:29 am, CID 510-699-6283 ("Debt Help")
- August 14, 2014 at 9:43am, CID 510-699-6283 ("Debt Help")
- August 19, 2014 at 1:53 pm, CID 510-699-6283 ("Debt Help")
- August 19, 2014 at 1:59 pm, CID 855-585-0011
- August 19, 2014 at 1:59 pm, CID 855-585-0011
- August 21, 2014 at 9:29 am, CID 219-335-6497
- August 21, 2014 at 9:34 am, CID 510-699-6283
- August 21, 2014 at 9:35 am, CID 510-699-6283
- August 21, 2014 at 9:36 am, CID 510-699-6283
- August 27, 2014 at 11:11 am, CID 219-335-6497
- September 8, 2014 at 3:27 pm, CID 510-699-6283
- September 18, 2014 at 4:41 pm, CID 510-699-6283
- September 29, 2014 at 12:35 pm, CID 510-699-6283
- September 29, 2014 at 12:35 pm, CID 510-699-6283
- October 15, 2014 at 12:24 pm, CID 855-585-0011
- October 17, 2014 at 3:38 pm, CID 510-699-6283
- November 10, 2014 at 1:37 pm, CID 510-699-6283
- August 12, 2015 at 12:54 pm, CID 949-326-9222   [prerecorded call]
- August 12, 2015 at 1:09 pm, CID 949-326-9222
- August 12, 2015 at 1:17 pm, CID 855-585-0011
- August 13, 2015 at 9:00 am, CID 949-326-9222
- August 13, 2015 at 2:32 pm, CID 949-326-9222
- August 14, 2015 at 4:16 pm, CID 949-326-9222
- August 18, 2015 at 12:36 pm, CID 949-326-9222
- August 18, 2015 at 12:38 pm, CID 949-326-9222
  [end list, Complaint continues]

Complaint

7.      While each of the calls complained of above used the Caller ID number, they did not transmit Caller ID name information as required by law. 47 C.F.R. § 64.1601(e).

8.      Mr. Sapan's home phone has been listed on the federal "Do Not Call" registry maintained by the Federal Trade Commission from December 23, 2007 to the present.

9.      Mr. Sapan made notes regarding each call from Defendants immediately after the call occurred.  He does this with most junk calls he receives since it can be difficult to recall the information later.

10.      A true and correct copy of Mr. Sapan's compiled call notes for each call alleged in this case is attached hereto as Exhibit "1" and incorporated herein as if set forth verbatim.

11.      Mr. Sapan hereby alleges that his call notes in Exhibit 1 are a true and accurate representation of what was said and what transpired during each call claimed to be violative herein.

12.      During each of the calls Mr. Sapan answered Defendants tried to sell their mortgage lending and brokerage services or attempted to do so before being cut off by technical difficulties.

13.      During each of the calls Mr. Sapan answered the representative self-identified as being with "Lexington Home Loans"—a fictitious business name of

Complaint

Lexington Mortgage Corporation—or in the cases where technical difficulties cut the representative off before they could self-identify, the call was made using the exact same CID number as one of the calls wherein the representative identified as being with "Lexington Home Loans".

14.    During a few of the calls Mr. Sapan answered the representative initiating the cold call used the generic sounding business names "US Nationwide" and "National Financial" before bringing in representatives who actually identify the real company whose services were being sold, Lexington Home Loans.

15.    Mr. Sapan is familiar with this sort of "hot transfer" telemarketing where the initial representative uses a false name to avoid liability before bringing in or identifying the real company behind the calls, and therefore alleges on information and belief that the business names "US Nationwide" and "National Financial" are false names.

16.    To the extent that any of the calls may have used a telemarketing agent to set up a "hot transfer" to Lexington Home Loans, Plaintiff alleges on information and belief that this agent was employed by Lexington Home Loans directly or by appearance since every answered call transferred to them intentionally and the initial representative would refer to the Huron representative as a "senior advisor" or "senior loan officer" to give the impression they were all

- 5 -

part of the same organization or joint enterprise, or that the agents conduct was

ratified after the fact by the continued use the illegal calls during a period lasting

approximately one year.

17.    Each of the calls Mr. Sapan missed came from the exact same CID

number as one of the calls he did answer wherein Defendants identified themselves

and tries to sell their mortgage lending and brokerage services.

18.    Therefore, Plaintiff alleges on information and belief that Defendants

transmitted each of the calls he did not answer, and transmitted them for the

purpose of trying to sell their services.

19.    The call on August 12, 2015 at 12:54 pm from CID 949-326-9222

was prerecorded and did not have a live person ask permission to play the

recording before it played.

20.    It played a message wherein a representative calling herself "Melissa"

asked if the call recipient wanted help with their mortgage and instructed them to

"press 1" to continue the call.

21.    Mr. Sapan did press 1 solely in order to figure out who was making

the call and why, but the call was dropped.

22.    Moments later at 1:09 pm, Mr. Sapan received a live call from the

exact same CID number that followed the pattern of previous calls with the initial

Complaint

representative using a false name and then connecting him to someone from

Lexington Home Loans who made the sales pitch.

23.     While the prerecorded call cut off before the call could be completed.

Mr. Sapan alleges on information and belief that the call was made by Lexington

Home Loans and that the purpose of the call was to sell him their mortgage lending

and brokerage services.

## Liability of Lexington Home Loans

24.     As recited above, the contemporaneous call notes show that Lexington

Home Loans self-identified using that name during the calls Mr. Sapan answered

and that the calls he did not answer used the same CID number as one he did

answer wherein Lexington Home Loans self-identified.

25.     Shortly after receiving the first few calls, on or about August 1, 2014,

Mr. Sapan performed a Google search for "Lexington Home Loans" since that was

the name given during the calls.

26.     The first result was Lexington Home Loans' website,

"www.lexingtonhl.com", wherein their exact corporate name of LEXINGTON

MORTGAGE CORPORATION was found in the fine print, and the wesite also

gives the company address as 300 Spectrum Center Drive, Suite 170, Irvine, CA

92618.

Complaint

27.     Every other result on the first page of results was an advertisement or listing for Lexington Home Loans, all of which identify the exact corporate name as LEXINGTON MORTGAGE CORPORATION located at 300 Spectrum Center Drive, Suite 170, Irvine, CA 92618, and also identify SPIROS K. CHENG as the owner and Chief Executive Officer.

28.     Lexington Home Loans is registered as a fictitious business name owned by Lexington Mortgage Corporation with the Orange County Clerk-Recorder office (Registration No. 20126293348).

29.     Lexington Mortgage Corporation is incorporated in the State of Florida rather than California even thought California is listed as its principal place of business (Florida Div. of Corporations Document No. F11000003045).

30.     The Florida Division of Corporations registration for Lexington Mortgage Corporation d/b/a Lexington Home Loans lists Spiros K. Cheng as the sole officer and owner of the company.

31.     Lexington Home Loans is registered under its corporate name with the California Bureau of Real Estate and lists Spiros K. Checng as the only broker for the company.  (DRE Lic. No. 01818025).

Liability of Spiros K. Cheng

32.     Defendant Spiros K. Cheng is, and at all times herein mentioned was,

Complaint

the owner of Defendant Lexington Home Loans.

33.     As detailed above, Mr. Cheng is the only listed officer, board member, or broker for Defendant Lexington Mortgage Corporation d/b/a Lexington Home Loans in any public documents filed with the State of California or the State of Florida.

34.     Plaintiff has searched public records such as federal employer Identification Number registries and can find no record that Lexington Home Loans ever employed anyone in a managerial capacity, nor any evidence that anyone other than Spiros K. Cheng ever held any managerial role at the company.

35.     Plaintiff alleges on information and belief that Defendant Spiros K. Cheng made the violative calls, ordered them made, knew the calls described above were being made and did nothing, or was willfully and recklessly ignorant of the fact his company was making the calls described above.

## Actual Harm & Willful and Knowing Conduct

36.     Mr. Sapan has been harmed by the junk calls complained of herein by the direct waste of his time during the calls themselves, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must

Complaint

pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

37.     Mr. Sapan has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

38.     During at each of Defendants' calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendants.

39.     As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 15% of his monthly phone bills in August of 2014 and August of 2015 since Defendants calls constituted 15% or more of the total calls to his phone during the heights of their junk calling campaign in those two months.

40.     Plaintiff alleges on information and belief that Defendants made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

- 10 -

Complaint

41.     Plaintiff alleges on information and belief that Defendants made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## FIRST CAUSE OF ACTION

[TCPA Violation – Prerecorded Telesolicitation – For 1 Prerecored Call]

42.     Plaintiff  realleges all paragraphs above and incorporates them herein by reference.

43.     Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

44.   Subdivision (b) (1) (B) of Section 227 of Title 47 of the United States Code makes it unlawful for any person to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the Commission under paragraph (2) (B);"

45.   Defendants have called Plaintiff's residential telephone line, using an artificial or prerecorded voice to deliver a message, without Plaintiff's express permission during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are the only calls known to Plaintiff at this time and Plaintiff

- 11 -

Complaint

states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line.  These calls were not made for any emergency purpose, nor were these calls exempt under subdivisions (a) and/or (c) of section 64.1200 of title 47 of the Code of Federal Regulations.

46.   Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of 47 U.S.C. §227 (b)(1) (B). Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both.  If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## SECOND CAUSE OF ACTION
[TCPA Violation – Do Not Call List – For All 27 Calls]

47.   Plaintiff realleges all paragraphs above and incorporates them herein by reference.

48.   Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

49.   Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone

Complaint

solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations".

50.   At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

51.   Defendants have called Plaintiff's residential telephone line for solicitation purposes during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line.  These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff.  37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

52.   Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the national do-not-call registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both.  If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THIRD CAUSE OF ACTION**
[Violation(s) of California Civil Code § 1770 (a) (22) (A) –
For 1 Prerecorded Telesolicitation Call]

53.   Plaintiff realleges all paragraphs above and incorporates them herein by reference.

54.   California Civil Code § 1770 (a) (22) (A) requires that all recorded messages disseminated within the state be introduced by a live, natural voice giving the name of the entity calling, the name of the entity being represented, an address or phone number for that entity, and asking permission to play the recording.  Defendant's illegal prerecorded telemarketing calls to Plaintiff failed to comply with this requirement.

55.   As a proximate result of defendants' violation of Civil Code section 1770, plaintiff has suffered and continues to suffer damages in an amount not yet ascertained, to be proven at trial.

56.   Civil Code section 1780 (a) (2) provides for an injunction against future conduct in violation of Civil Code section 1770.

57.   Civil Code section 1780 (a) (4) provides for an award of punitive damages for violations of Civil Code section 1770.

58.   Civil Code section 1780 (d) provides for an award of attorneys fees for plaintiffs harmed by California Civil Code §1770 (a) (22) (A) violations.

- 14 -

Complaint

## FOURTH CAUSE OF ACTION
[Trespass to Chattel – For All 27 Calls]

59.   Plaintiff realleges all paragraphs above and incorporates them herein by reference.

60.   The conduct by defendants complained of herein, namely illegally calling Plaintiff's phone, constitutes an electronic trespass to chattel.

61.   At no time did Plaintiff consent to this trespass.

62.   As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 15% of his monthly phone bills in August of 2014 and August of 2015 since Defendants calls constituted 15% or more of the total calls to his phone during the heights of their junk calling campaign in those two months.

63.   In making the illegal calls described above, defendants were guilty of oppression and malice, in that defendants made said calls with the intent to vex, injure, or annoy Plaintiff or with a willful and conscious disregard of Plaintiff's rights. Plaintiff therefore seeks an award of punitive damages.

## FIFTH CAUSE OF ACTION
[Engaging in Unfair Business Practices – For All 27 Calls]

64.   Plaintiff realleges all paragraphs above and incorporates them herein by reference.

Complaint

65. Because these telephone calls violate federal statutes, they are unlawful business practices within the meaning of section 17200 of the Business and Professions Code.

66. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 15% of his monthly phone bills in August of 2014 and August of 2015 since Defendants calls constituted 15% or more of the total calls to his phone during the heights of their junk calling campaign in those two months.

67. Section 17203 of the Business and Professions Code entitles Plaintiff to an injunction enjoining defendants from engaging in unfair or unlawful business practices.

WHEREFORE Plaintiff prays for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

    1. For an award of $500.00 for each violation of 47 U.S.C. §227;

    2. For an award of $1,500.00 for each such violation found to have been willful;

On the SECOND CAUSE OF ACTION:

    3. For an award of $500.00 for each violation of 47 C.F.R. §64.1200 (c) (2);

    4. For an award of $1,500.00 for each such violation found to have been willful;

/ / /

- 16 -

Complaint

On the THIRD CAUSE OF ACTION:

    5.   For compensatory damages according to proof;

    6.   For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in activity in violation of California Civil Code §1770 (a) (22) (A);

    7.   For punitive damages;

    8.   For attorney's fees;

On the FOURTH CAUSE OF ACTION:

    9.   For compensatory damages according to proof;

    10.  For punitive damages;

On the FIFTH CAUSE OF ACTION:

    11.  For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in unfair or unlawful business practices pursuant to section 17203 of the Business and Professions Code;

On ALL CAUSES OF ACTION:

    12.  For attorney's fees pursuant to California Code of Civil Procedure § 1021.5.

    13.  For costs of suit herein incurred; and

    14.  For such further relief as the Court deems proper.


DATED: September 5, 2016          **PRATO & REICHMAN, APC**



                           /s/Christopher J. Reichman, Esq.
                           By: Christopher J. Reichman, Esq.
                           **Prato & Reichman, APC**
                           Attorneys for Plaintiff
                           PAUL SAPAN

- 17 -